1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JACKIE M. JOHNSON,                      No.  2:14-cv-0580 KJN P

12              Plaintiff,

13        v.                                 ORDER AND

14   CALIFORNIA MEDICAL FACILITY             FINDINGS & RECOMMENDATIONS
     HEALTH SERVICES, et al.,
15
                Defendants.
16

17

18        Plaintiff is a state prisoner, currently incarcerated at California Medical Facility in

19   Vacaville, California ("CMF").   Plaintiff proceeds, in forma pauperis and without counsel, in this

20   civil rights action filed pursuant to 42 U.S.C. § 1983, in which he alleges that defendant was

21   deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.  The

22   action proceeds on plaintiff's second amended complaint.  Plaintiff's motion for summary

23   judgment is before the court solely concerning defendant's contention that he failed to properly

24   exhaust administrative remedies before filing his complaint.  Rather than file an opposition,

25   defendant filed a motion to strike plaintiff's motion.  Also pending before the court is plaintiff's

26   motion for appointment of counsel.  For the reasons set forth below, the undersigned recommends

27   that plaintiff's motion for summary judgment be dismissed without prejudice and orders that

28   plaintiff's motion for appointment of counsel be denied.

                                              1

I. Background

    A.  Factual Allegations

On February 28, 2013, a ganglion lymphoma was surgically removed from plaintiff's wrist. (Second Amended Complaint, ECF No. 10 at 2.) On March 7, 2013, plaintiff's stitches were removed. Plaintiff alleges that the nurse who removed the stitches told him to wait for defendant Supervising Nurse Luisa Plasencia, R.N.[1] to dress and wrap the incision site. (Id.) Plaintiff alleges that when defendant looked at the incision, she told plaintiff, over his repeated objections, that the incision site did not require dressing and wrapping. Plaintiff asserts that he repeatedly asked defendant to dress and wrap the incision site, but defendant agreed only to apply four paper stitches and a band aid. (Id. at 3.) When plaintiff objected that paper stitches would not hold when they got wet, defendant allegedly called a correctional officer to remove plaintiff from the clinic, and "waved her hand indifferently in my direction, as if I were a fly buzzing around her head. . . ." (Id. at 4.) Plaintiff alleges that the incision soon began to bleed and the paper stitches came loose:

> Everyone could see that the wound was getting wetter all the time . . . . Back to J wing had to put a white face towel on wrist over the band aid. Towel turn crimson, paper stitches and band aid is now all the way crimson red and hanging off. . . . Getting my food tray I realized that my wound is now burning and pain bleeding red blood.

> Plaintiff walk into B-1 holding my wrist in my right hand. White towel now red. Here is everyone looking and asking me where you been what you do? What happen? You got a pass?

> . . . [After lock up for count] [e]verything is blood red wet and hanging off the wrist.

(Id. at 5) (sic).

Eventually, "someone said thay call the emergency room doctor and he said not to re-stitch the incision the best that thay can do now is to start rapping dressing plaintiff wound each day." (Id.) (sic). For several days thereafter, plaintiff's incision site was dressed and wrapped each day by various nurses until the incision healed.

---

[1] Plasencia is hereinafter referred to as "Defendant."

1    Plaintiff alleges that, as a result of defendant's failure to properly dress and wrap the

2    incision site, he suffered significant pain and emotional distress, and his wrist is now disfigured.

3          B.  Procedural History

4          This action commenced on February 28, 2014, with the filing of plaintiff's initial

5    complaint.  (ECF No. 1)  On March 17, 2014, the court screened the complaint and dismissed it

6    for failure to state a claim.  (ECF No. 4.)  On April 18, 2014, plaintiff filed a first amended

7    complaint.  (ECF No. 8.)  On May 8, 2014, the court screened the first amended complaint and

8    dismissed it for failure to state a claim.  (ECF No. 9.)  On June 10, 2014, plaintiff filed a second

9    amended complaint.  (ECF No. 10.)  On November 5, 2014, the court screened the second

10   amended complaint and found that it stated potentially cognizable claims under the Eighth

11   Amendment against defendant Plasencia.  (ECF No. 11.)  On December 23, 2014, plaintiff filed a

12   motion for appointment of counsel (ECF No. 16), and on February 19, 2015, a motion for

13   summary judgment (ECF No. 21).  On February 24, 2015, defendant filed an answer (ECF

14   No. 22), and on March 27, 2015, a motion to strike plaintiff's motion for summary judgment

15   (ECF No. 26).  The court now turns to the pending motions.

16   II.  Plaintiff's Motion for Summary Judgment and Defendant's Motion to Strike

17         Plaintiff moves for summary adjudication on the issue of exhaustion, contending that he

18   properly exhausted administrative remedies as required by the Prison Litigation Reform Act

19   ("PLRA").  Defendant moves to strike the summary judgment motion as "premature,

20   procedurally defective, and immaterial to the issue of administrative exhaustion."  (ECF No. 26 at

21   1.)

22        A.  Standards

23           1.  Legal Standard for Exhaustion of Administrative Exhaustion

24         The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

25   brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

26   prisoner confined in any jail, prison, or other correctional facility until such administrative

27   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

28   requirement applies to all inmate suits about prison life, whether they involve general

1   circumstances or particular episodes, and whether they allege excessive force or some other

2   wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

3        Proper exhaustion of available remedies is mandatory, Booth v. Churner, 532 U.S. 731,

4   741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other

5   critical procedural rules[.]" Woodford v. Ngo, 548 U.S. 81, 90 (2006). The Supreme Court has

6   also cautioned against reading futility or other exceptions into the statutory exhaustion

7   requirement. See Booth, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary,

8   a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

9   procedurally defective administrative grievance or appeal. See Woodford, 548 U.S. at 90-93.

10  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative

11  review process in accordance with the applicable procedural rules,' [] – rules that are defined not

12  by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218

13  (2007) (quoting Woodford, 548 U.S. at 88). See also Marella v. Terhune, 568 F.3d 1024, 1027

14  (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

15  exhaustion.'") (quoting Jones, 549 U.S. at 218).

16       In California, prisoners may appeal "any policy, decision, action, condition, or omission

17  by the department or its staff that the inmate or parolee can demonstrate as having a material

18  adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

19  On January 28, 2011, California prison regulations governing inmate grievances were revised.

20  See Cal. Code Regs. tit. 15, §§ 3084-3084.8. Now, inmates in California proceed through three

21  levels of appeal to exhaust the appeal process: (1) a first level formal written appeal on a CDC

22  602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third

23  level appeal to the Director of the California Department of Corrections and Rehabilitation

24  ("CDCR"). Id. § 3084.7. Under specific circumstances, the first level review may be bypassed.

25  Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

26  prisoner's administrative remedies. See id. § 3084.7(d)(3). A California prisoner is required to

27  submit an inmate appeal at the appropriate level and proceed to the highest level of review

28  available to him. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293

                                                4

1   F.3d 1096, 1098 (9th Cir. 2002).

2          Since the 2011 revision, each grievance must be "limited to one issue or related set of

3   issues," Cal. Code Regs. tit. 15, §3084.2(a)(1), and must specifically identify the correctional

4   official(s) against whom the allegations are made, or provide sufficient information for the

5   appeals coordinator to attempt to make such identification.  The pertinent CDCR regulation

6   provides:

7                  The inmate or parolee shall list all staff member(s) involved and
                   shall describe their involvement in the issue.  To assist in the
8                  identification of staff members, the inmate or parolee shall include
                   the staff member's last name, first initial, title or position, if known,
9                  and the dates of the staff member's involvement in the issue under
                   appeal.  If the inmate or parolee does not have the requested
10                 identifying information about the staff member(s), he or she shall
                   provide any other available information that would assist the
11                 appeals coordinator in making a reasonable attempt to identify the
                   staff member(s) in question.
12

13  15 Cal. Code Reg. § 3084.2(a)(3).

14         In addition, CDCR's Department Operations Manual ("DOM") provides that no issue or

15  person may be deemed exhausted unless it was specified in the initial grievance and considered at

16  each level of administrative review:

17                 Administrative remedies shall not be considered exhausted relative
                   to any new issue, information or person later named by the
18                 appellant that was not included in the originally submitted CDCR
                   Form 602 and addressed through all required levels of
19                 administrative review (up to and including the third level, unless the
                   third level of review is waived by regulation).
20

21  CDCR DOM § 54100.13.3.

22         An inmate now has thirty calendar days to submit his or her appeal from the occurrence of

23  the event or decision being appealed, or "upon first having knowledge of the action or decision

24  being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

25         Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones,

26  549 U.S. at 204, 216.  In Albino, the Ninth Circuit agreed with the underlying panel's decision[2]

27  _____

28  [2] See Albino v. Baca, 697 F.3d 1023, 1031 (9th Cir. 2012).  The three judge panel noted that "[a]
    defendant's burden of establishing an inmate's failure to exhaust is very low."  Id. at 1031.

                                              5

1    "that the burdens outlined in Hilao [v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996),]

2    should provide the template for the burdens here."   Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir.

3    2014) (en banc).   A defendant need only show "that there was an available administrative remedy,

4    and that the prisoner did not exhaust that available remedy."   Albino, 747 F.3d at 1172.   Once the

5    defense meets its burden, the burden shifts to the plaintiff to show that the administrative

6    remedies were unavailable.   Id.

7         A prisoner may be excused from complying with the PLRA's exhaustion requirement if

8    he establishes that the existing administrative remedies were effectively unavailable to him.   Id. at

9    1172-73.   When an inmate's administrative grievance is improperly rejected on procedural

10   grounds, exhaustion may be excused as effectively unavailable.   Sapp v. Kimbrell, 623 F.3d 813,

11   823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's

12   mistake rendered prisoner's administrative remedies "effectively unavailable"); Brown v. Valoff,

13   422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal

14   granted at second level and no further relief was available).

15        Where a prison system's grievance procedures do not specify the requisite level of detail

16   for inmate appeals, Sapp, 623 F.3d at 824, a grievance satisfies the administrative exhaustion

17   requirement if it "alerts the prison to the nature of the wrong for which redress is sought."   Griffin

18   v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).   "A grievance need not include legal terminology

19   or legal theories unless they are in some way needed to provide notice of the harm being grieved.

20   A grievance also need not contain every fact necessary to prove each element of an eventual legal

21   claim.   The primary purpose of a grievance is to alert the prison to a problem and facilitate its

22   resolution, not to lay groundwork for litigation."   Griffin, 557 F.3d at 1120.

23        If, under the Rule 56 summary judgment standard, the court concludes that plaintiff has

24   failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice.

25   Wyatt v. Terhune, 315 F.3d 1108, 1120, overruled on other grounds by Albino, 747 F.3d at 1162.

26   ////

27

28   Relevant evidence includes statutes, regulations, and other official directives that explain the
     scope of the administrative review process.   Id. at 1032.

6

1              2. <u>Legal Standard for Summary Judgment</u>

2          Summary judgment is appropriate when it is demonstrated that the standard set forth in

3  Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

4  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

5  judgment as a matter of law."  Fed. R. Civ. P. 56(a).[3]

6              Under summary judgment practice, the moving party always bears
              the initial responsibility of informing the district court of the basis
7              for its motion, and identifying those portions of "the pleadings,
              depositions, answers to interrogatories, and admissions on file,
8              together with the affidavits, if any," which it believes demonstrate
              the absence of a genuine issue of material fact.
9

10 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

11 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

12 only prove that there is an absence of evidence to support the non-moving party's case."  <u>Nursing</u>

13 <u>Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376,

14 387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory

15 committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

16 burden of production may rely on a showing that a party who does have the trial burden cannot

17 produce admissible evidence to carry its burden as to the fact.").  Indeed, summary judgment

18 should be entered, after adequate time for discovery and upon motion, against a party who fails to

19 make a showing sufficient to establish the existence of an element essential to that party's case,

20 and on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322.

21 "[A] complete failure of proof concerning an essential element of the nonmoving party's case

22 necessarily renders all other facts immaterial."  <u>Id.</u> at 323.

23          Consequently, if the moving party meets its initial responsibility, the burden then shifts to

24 the opposing party to establish that a genuine issue as to any material fact actually exists.  <u>See</u>

25 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

26 establish the existence of such a factual dispute, the opposing party may not rely upon the

27 ───────────────
[3]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
   However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
28 standard for granting summary judgment remains unchanged."

1    allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

2    form of affidavits, and/or admissible discovery material in support of its contention that such a

3    dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

4    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

5    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

6    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

7    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

8    a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

9    (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

10   1564, 1575 (9th Cir. 1990).

11        In the endeavor to establish the existence of a factual dispute, the opposing party need not

12   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

13   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

14   trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

15   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

16   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

17   amendments).

18        In resolving a summary judgment motion, the court examines the pleadings, depositions,

19   answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

20   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

21   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

22   drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

23   are not drawn out of the air, and it is the opposing party's obligation to produce a factual

24   predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

25   Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

26   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

27   some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

28   not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

1    trial.'" <u>Matsushita</u>, 475 U.S. at 586 (citation omitted).

2                            3. <u>Legal Standard for Motion to Strike</u>

3            Federal Rule of Civil Procedure 12(f) provides that a district court "may strike from a

4    pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

5    "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that

6    must arise from litigating spurious issues." <u>Sidney–Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880,

7    885 (9th Cir. 1983).  Motions to strike are generally disfavored, and this court has previously

8    stated that a motion to strike brought pursuant to Rule 12(f) "should not be granted unless it is

9    clear that the matter to be stricken could have no possible bearing on the subject matter of the

10   litigation." <u>Neveu v. City of Fresno</u>, 392 F.Supp.2d 1159, 1170 (E.D. Cal. 2005) (citation and

11   quotation marks omitted); <u>see also</u> <u>Osei v. Countrywide Home Loans</u>, 692 F. Supp. 2d 1240,

12   1255 (E.D. Cal. 2010).

13           2. <u>Analysis</u>

14           Plaintiff moves for summary judgment in his favor on the issue of exhaustion, asserting

15   that he properly exhausted administrative remedies prior to filing suit.  Plaintiff's argument in

16   support of this motion consists solely of an assertion that he "submit[s] proof of specific facts,

17   regarding the exhaustion of administrative remedies" (ECF No. 21 at 2), followed by fifteen

18   pages of documents attached to his moving papers (<u>id.</u> at 4-18).  The remainder of plaintiff's

19   motion reiterates the allegations in his second amended complaint.

20           Defendant moves to strike plaintiff's motion on the grounds that "even liberally

21   constru[ed] . . . Plaintiff's motion is so inadequate and procedurally defective [that] Defendant

22   cannot be required to respond."  (ECF No. 26 at 3.)

23           Defendant moves to strike the motion as untimely because it was filed before a Discovery

24   and Scheduling Order had issued and there was inadequate time afforded for discovery.

25   Defendant is technically incorrect on this point.  Federal Rule of Civil Procedure 56 provides in

26   pertinent part that, "Unless a different time is set by local rule or the court orders otherwise, a

27   party may file a motion for summary judgment at any time until 30 days after the close of all

28   discovery." Fed. R. Civ. P. 56(b) (emphasis added).  As no Discovery and Scheduling Order had

                                                     9

yet issued, and the Local Rules of this judicial district do not prohibit such an early filing, the motion was not untimely-filed.  See also Burlington N. Santa Fe R.E. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation, 323 F.3d 767, 773 (9th Cir. 2003) (recognizing permissibility of filing an early summary judgment motion, while also recognizing appropriateness of continuing such a motion if the non-moving party makes a proper showing under Fed. R. Civ. P. 56(d)).

Defendant also moves to strike plaintiff's motion as premature, pointing to the fact that plaintiff's motion was docketed on February 19, 2015, five days before defendant filed her answer.  Defendant is correct on this point.  Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones, 549 U.S. at 204, 216.  As defendant had not filed an answer, and therefore had not pled the affirmative defense at the time plaintiff filed his motion, plaintiff was in effect seeking summary judgment on a legal issue that did not exist at the time he filed his motion, and that may never have existed had defendant not pled the affirmative defense.

Nevertheless, given that, five days later, defendant *did* raise the issue of exhaustion as an affirmative defense in her answer (ECF No. 22 at 4), and given plaintiff's status as a pro se prisoner litigant, the court finds it inadvisable to grant the motion to strike on such a narrow ground.

Finally, defendant argues for striking plaintiff's motion on the grounds that it does not conform to the requirements of Federal Rule of Civil Procedure 56 and Local Rule 260.  As summarized by defendant:

> Plaintiff's only statement about the exhaustion of his administrative remedies is that he submitted "proof of specific facts regarding the exhaustion of administrative remedies." (ECF No. 21 at 2:23-24.) Plaintiff does not cite to, reference, or provide a declaration authenticating or explaining any of the numerous documents attached to his motion and how they support his assertion that he exhausted his administrative remedies. (Id. at 4-18.) Plaintiff apparently expects the court to determine whether he exhausted his administrative remedies based on one sentence in his motion and the attached documents.

(ECF No. 26 at 3-4.)  Defendant's assertions are substantially accurate.  Federal Rule of Civil Procedure 56(c) sets forth the procedural requirements to be satisfied by a party who "assert[s]

10

1    that a fact cannot be . . . genuinely disputed," as does plaintiff. Fed. R. Civ. P. 56(c)(1).  One

2    such requirement is "**citing** to particular parts of materials in the record," such as documents or

3    declarations, Fed. R. Civ. P. 56(c)(1)(A) (emphasis added).  Plaintiff has attached fifteen pages of

4    exhibits to his motion, but does not cite to the contents of any of these documents in support of

5    his argument.  Similarly, Local Rule 260 requires the moving party to file a statement of

6    undisputed facts which "enumerate[s] discretely each of the specific material facts relied upon in

7    support of the motion and cite[s] the particular portions of any pleading, affidavit, deposition,

8    interrogatory answer, admission, or other document relied upon  to  establish  that  fact."  Local

9    Rule 260(a).  Plaintiff failed to file a statement of undisputed facts in support of his motion.

10          In effect, plaintiff has filed a mass of documents with the court in the expectation that

11   defendant (and the court) can successfully decipher his position.  The undersigned agrees that,

12   under such circumstances, "[d]efendant cannot reasonably be required to respond."  (ECF No. 26

13   at 5.)  While acknowledging that the Ninth Circuit has "held consistently that courts should

14   construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying

15   summary judgment rules strictly," Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010), it

16   appears that the motion for summary judgment is sufficiently disorganized and incoherent that

17   defendant cannot be expected to rebut plaintiff's argument in its current form.

18          Given the early stage of the proceedings, and the rigorous standard for granting a motion

19   to strike, it appears that the most prudent course of action is to recommend dismissal of plaintiff's

20   motion for summary judgment without prejudice, rather than to strike the motion outright.  As

21   exhaustion of administrative remedies is a prerequisite to suit under the PLRA, it is not "clear that

22   the matter to be stricken could have no possible bearing on the subject matter of the litigation."

23   Neveu, 392 F. Supp. 2d at 1170.  Consequently, striking plaintiff's motion appears inadvisable,

24   particularly as dismissal without prejudice will have the same procedural effect by relieving

25   defendant of having to oppose the motion.

26          Plaintiff may, if he wishes, once again move for summary judgment on the same grounds

27   – if he ensures that his motion conforms to the requirements of Federal Rule of Civil Procedure

28   56 and Local Rule 260.  That said, plaintiff is advised that he need not bring such a motion in

order to continue with this action.  If defendant chooses to file a motion for summary judgment on exhaustion grounds at some future date, plaintiff will be free to oppose the motion by presenting evidence that he properly exhausted administrative remedies.  In other words, the question of exhaustion will be decided on the basis of the evidence brought forward by the parties, rather than who brought the pertinent motion.  Accordingly, plaintiff is free, if he so wishes, to concentrate on other aspects of this case unless and until such time as defendant files a motion on the exhaustion issue.

III.  Motion for Appointment of Counsel

Plaintiff also requests that the court appoint him counsel.  District courts lack authority to require counsel to represent indigent prisoners in Section 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court may request an attorney to voluntarily represent such a plaintiff.  See 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved.  Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel).  The burden of demonstrating exceptional circumstances is on the plaintiff.  Id.  Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel.

Here, plaintiff asserts that he has only a 12th grade education; that he is indigent and cannot afford to hire counsel; and that he "cannot obtain crucial evidence under discovery that only an attorney can obtain through cooperation."  (ECF No. 16 at 1.)  These factors do not constitute "exceptional circumstances" as defined by the Ninth Circuit.

Having considered the factors under Palmer, the court finds that plaintiff has failed to meet his burden of demonstrating exceptional circumstances warranting the appointment of counsel at this time.

////

12

IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for the appointment of counsel (ECF No. 16) is denied without prejudice.

2.  The Clerk of the Court is directed to substitute Luisa Plasencia as the sole named defendant in this action.

3.  The Clerk of the Court is directed to appoint a district judge in this action.

IT IS HEREBY RECOMMENDED that:

1.  Plaintiff's motion for summary judgment (ECF No. 21) be dismissed without prejudice.

2.  Defendant's motion to strike plaintiff's motion for summary judgment (ECF No. 26) be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 24, 2015

/john0580.31.kjn+msj

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

13