UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE M. JOHNSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA MEDICAL FACILITY<br>HEALTH SERVICES, et al.,<br><br>　　　　Defendants. | No. 2:14-cv-0580 WBS KJN P<br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

I. Introduction

Plaintiff is a former state prisoner, who proceeds without counsel and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case proceeds on the fourth amended complaint, solely against defendant Luisa Plasencia, R.N. Presently pending is defendant Plasencia's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the undersigned recommends that defendant's motion be partially denied, and defendant be granted qualified immunity.

II. The Fourth Amended Complaint

Plaintiff alleges the following: On February 28, 2013, a ganglion lymphoma was surgically removed from plaintiff's left wrist. (ECF No. 38 at 2.) On March 7, 2013, plaintiff's stitches were removed. Plaintiff was told to wait for defendant Supervising Nurse Luisa Plasencia, R.N. to dress and wrap the incision site. (Id.) The incision site was never dry. After a

1

long wait, defendant took one look at the incision site and said "it did not need to be dressed or wrapped," and then walked away. Defendant refused to give her name and would not give a good examination, but came back with "paper stitches and one not . . . big enough band aid." (ECF No. 38 at 2.) Plaintiff repeatedly asked defendant to dress and wrap the incision site, but defendant "put her hands up and walked away." (Id.) Defendant allegedly called a correctional officer to remove plaintiff from the clinic, and "waved her hand indifferently in [his] direction, as if [he] were a fly buzzing around her head. . . ." (Id. at 3.) Plaintiff was escorted back to the day room where inmate Thomas saw plaintiff bleeding and gave him a face towel to cover it, and the band-aid and paper sutures were now hanging off plaintiff's wrist. Plaintiff had another inmate ask the wing correctional officer to call B-1 clinic, which advised the officer to send plaintiff to B-1 after dinner/count. After count, in the dining room, plaintiff realized his wound "is [now] burning with pain[,] bleeding red blood." (Id.) After presenting at B-1 clinic, plaintiff was referred to the emergency room, where the doctor informed plaintiff the wound could not be re-stitched because it may get infected. Subsequently, various nurses at B-1 clinic dressed and wrapped plaintiff's wound every day for over 4 weeks. (ECF No. 38 at 4.) At some unidentified point, the wound did get infected, requiring an operation to remove the infected portion. (ECF No. 38 at 3.) Over six months later, plaintiff still gets shooting pain and burning at the wound site, and suffers an ugly scar.

Plaintiff provided the declarations of inmates Josh Thomas and Rishardo Lawrence who state that on March 7, 2013, while sitting in the dayroom, they saw plaintiff's wound was only half covered and the band-aid was wet with or covered in blood. (ECF No. 38 at 5, 9.) Thomas gave plaintiff a towel. At the dining hall during dinner, Thomas and Lawrence noticed plaintiff's wound was open and bleeding. When plaintiff returned from B-1 clinic, his left wrist was covered with white gauze wrapping or bandaged. (ECF No. 38 at 6, 9.) Lawrence declares that subsequently, plaintiff went to B-1 clinic daily for the changing of his bandages. (ECF No. 38 at 10.)

////

////

III. Defendant's Motion to Strike

Plaintiff filed an opposition to defendant's motion to dismiss; defendant filed a reply. On March 9, 2017, plaintiff signed a document styled, "Reply Not to Dismiss," in which he claims he has not conceded, and requests that the court not dismiss the pleading because the defendant did not dress plaintiff's wound as the doctor ordered. (ECF No. 59 at 2.) Defendant moves to strike plaintiff's filing as an unauthorized sur-reply. (ECF No. 60.) Defendant asserts that sur-replies are not permitted absent a showing of necessity and good cause, and argue that plaintiff's pro se status does not excuse him from complying with the Court's rules. Defendant contends that plaintiff had sufficient time to file an opposition to the motion, and that plaintiff's sur-reply reiterates arguments in his opposition.

The Local Rules do not authorize the routine filing of a sur-reply. Nevertheless, a district court may allow a sur-reply "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. 2005); accord Norwood v. Byers, 2013 WL 3330643, at *3 (E.D. Cal. 2013) (granting the motion to strike the sur-reply because "defendants did not raise new arguments in their reply that necessitated additional argument from plaintiff, plaintiff did not seek leave to file a sur-reply before actually filing it, and the arguments in the sur-reply do not alter the analysis below"), adopted, 2013 WL 5156572 (E.D. Cal. 2013). In the present case, defendant did not raise new arguments in the reply brief, plaintiff did not seek leave to file a sur-reply, and his reiterated allegations (ECF No. 59 at 2:14-28) do not impact the court's analysis. For these reasons, defendant's motion to strike plaintiff's sur-reply is granted.

IV. Motion to Dismiss

A. Legal Standards Governing Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v.

McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

B. Eighth Amendment Standards

Generally, deliberate indifference to a serious medical need presents a cognizable claim for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976.) According to Farmer v. Brennan, 511 U.S. 825, 947 (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows that [the] inmate [ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. The deliberate indifference standard "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated

individuals because 'the State's responsibility to provide inmates with medical care does not conflict with competing administrative concerns." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).

Specifically, a determination of "deliberate indifference" involves two elements: (1) the seriousness of the prisoner's medical needs; and (2) the nature of the defendant's responses to those needs. McGuckin, 974 F.2d at 1059.

First, a serious medical need exits if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). Examples of instances where a prisoner has a "serious" need for medical attention include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990).

Second, the nature of a defendant's response must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. McGuckin, 974 F.2d at 1060. Deliberate indifference may occur when prison officials deny, delay or intentionally interfere with medical treatment, or may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988). In order for deliberate indifference to be established, there must first be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." Id. Second, there must be resulting harm from the defendant's activities. (Id.) The needless suffering of pain may be sufficient to demonstrate further harm. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

////

5

Mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). However, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. (Id.)

## C. The Parties' Positions

### i. Defendant's Motion

Defendant disputes that plaintiff had a serious medical need, arguing that the seriousness of the injury must be evaluated on the basis the condition presented at the time, not based on subsequent conditions the defendant did not observe:

> "There are no facts in the FAC [first amended complaint"] that would support a finding that a wart, or ingrown hair, could have resulted in a "significant injury" or in any way "significantly" altered Plaintiff's daily activities. McGuckin, 914 F.2d at 1059.

Larson v. Paramo, 2016 WL 3905712, at *7 (S.D. Cal. July 19, 2016). Plaintiff presented with a small surgical incision which had healed sufficiently to have the stitches removed (by a different nurse) and was not bleeding. Defendant examined plaintiff and determined that all he needed was paper sutures and a band-aid. About four hours later, the site started bleeding, and plaintiff returned to the clinic and his wound was dressed and wrapped by different medical staff. The "small, healing, post-surgical site was not bleeding" when defendant treated plaintiff, and therefore does not constitute a "serious medical need under the Eighth Amendment, relying on Edwards v. California State Prison Los Angeles County, 2012 WL 3023317, *11 (C.D. Cal. July 23, 2012) (small cut to prisoner's hand, which LVN treated, but not to the prisoner's satisfaction, did not constitute a serious medical need). (ECF No. 55-1 at 5.)

Defendant also contends that plaintiff fails to allege facts demonstrating that she could have inferred a substantial risk of harm existed, because the small, healing surgical incision was not bleeding. That plaintiff disagrees with defendant does not establish deliberate indifference,

6

but rather a difference of opinion.

Defendant also seeks qualified immunity because it was not beyond debate that defendant's choice of wound dressing violated the Eighth Amendment. Defendant did not fail to treat plaintiff, but rather chose a treatment that was not medically unacceptable under the circumstances. Plaintiff's incision was small, the wound did not start bleeding until after defendant applied the paper sutures and band-aid and plaintiff had returned to his housing unit, about four hours later. Under these circumstances, it was not beyond debate that defendant's choice of wound dressing was medically unacceptable and thus was not indisputably unconstitutional. Defendant relies on Jackson, 90 F.3d at 332 (prisoner entitled to qualified immunity unless it is beyond debate that the course of treatment chosen was medically unacceptable under the circumstances), and Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (prison medical providers' choice of treatment for prisoner's hernia did not clearly violate the prisoner's Eighth Amendment rights).

### ii. Plaintiff's Opposition

Plaintiff counters that he has stated a plausible claim for deliberate indifference to his serious medical needs because the order from the doctor was to wrap and dress the wound because of the removal of the stitches. (ECF No. 57 at 2.) Plaintiff appears to claim that the nurse who took out his stitches told plaintiff that the doctor wrote up the order. (Id.) The incision site was wet when defendant put on the two paper sutures and the band-aid. Despite plaintiff asking defendant to do as the doctor said, defendant refused several times. Defendant did not follow the doctor's orders, and by not wrapping and dressing plaintiff's incision, the incision came open. He asks the court not to dismiss his case.[1]

Plaintiff did not address the issue of qualified immunity.

### iii. Defendant's Reply

Defendant contends plaintiff simply reasserted his allegations and failed to address the legal grounds supporting her motion. Because plaintiff failed to address defendant's argument

---

[1] Plaintiff also discusses matters related to settlement negotiations which are not relevant here.

7

that the allegations of the pleading are insufficient to state a claim for deliberate indifference and that defendant is entitled to qualified immunity, the court should find that plaintiff conceded defendant's arguments. (ECF No. 58 at 1-2.)

D. Discussion

In Edwards, the prisoner inflicted a small cut on his left hand by "banging on the door" of his cell to get a correctional officer's attention. Id., 2012 WL 3023317, at *11. Edwards' medical records appended to his pleading established that "his cuts did not constitute a serious medical need or pose a significant threat to his health." Id. ("he only suffered "several small cuts in his hand", . . . [Edwards] "appeared well" and expressly admitted he only had "mild pain" and was in "no acute distress," and that his minor injury was promptly treated with 4 or 5 small stitches, and did not pose a significant threat to his health.")

Here, the court does not have benefit of any medical records. Indeed, the court does not even have a definition of "ganglion lymphoma."[2]

In the operative pleading, plaintiff claims that he was told to wait for defendant to dress and wrap the incision site. (ECF No. 38 at 2.) In his opposition, plaintiff declares that the doctor ordered plaintiff's incision to be dressed and wrapped. If plaintiff can demonstrate that a doctor ordered that the incision be dressed and wrapped, such order suggests that the doctor found the post-surgical incision to be worthy of treatment. McGuckin, 974 F.2d at 1059. The incision was located on plaintiff's wrist, and an inference can be made that the frequent use of one's wrist may put the incision at risk for reopening. Moreover, an inference can be made that the failure to properly care for a surgical incision site, even after the removal of sutures, may subject the patient to an infection or allow the incision to reopen. The fact that the incision was small does not negate the risk of infection. For all of these reasons, at this stage of the proceedings, the undersigned finds that plaintiff has demonstrated a serious medical need, and that the alleged

---

[2] As noted by defendant, in the second amended complaint, plaintiff described the ganglion lymphoma as the size of a quarter. (ECF No. 10 at 2.) Defendant asks the court to take judicial notice that a quarter is less than one inch in diameter. (ECF No. 55-1 at 2, citing https://en.wikipedia.org/wiki/Quarter_(United_States_coin) (a quarter has a diameter of .955 inches.").

failure to adequately care for the incision site arguably posed a risk that an incision on the wrist might reopen and subject plaintiff to an infection.

An important distinction in this case is that plaintiff did not present to defendant for initial treatment. Rather, plaintiff presented to another nurse for removal of stitches after surgery. Following the removal of the stitches, plaintiff declares that he was directed to wait for defendant to dress and wrap the incision site. This fact raises an inference that the other nurse believed the site should be dressed and wrapped. In his opposition, plaintiff declares that the doctor ordered that his incision was to be dressed and wrapped, he was informed of the order by the other nurse, and he claims he informed defendant of the doctor's order. It is likely that a medical record exists directing that plaintiff return to clinic for removal of stitches within a certain time frame, and that record may include additional follow-up orders or instructions. Again, if plaintiff can adduce evidence that the doctor ordered the incision site to be dressed and wrapped, defendant's decision to apply two paper sutures and a band-aid to a wet incision site was arguably contrary to, or interfered with, the doctor's order, constituting deliberate indifference.

On the other hand, defendant may be able to adduce evidence that the doctor did not order the incision dressed and wrapped, and that defendant's decision to apply the two paper sutures and a band-aid was reasonable, based on defendant's own examination.

If plaintiff had simply presented to defendant for an initial exam of the incision site and defendant examined the site and determined that only two paper sutures and a band-aid was sufficient, this court would find such claim was, at most, mere negligence. But on a motion to dismiss, the court must take as true plaintiff's claims that he was told to wait for defendant to dress and wrap the site, and that the doctor ordered that the incision site on plaintiff's wrist be dressed and wrapped. The use of a band-aid and paper sutures does not appear to be the equivalent of "dressing and wrapping," as ordered by the doctor, because other nurses subsequently wrapped plaintiff's incision site with white gauze bandages, suggesting that the use of paper sutures and a band-aid was inadequate. Whether or not plaintiff's incision began bleeding immediately or hours later in the dining room is of no consequence where plaintiff alleges that the wound was wet, and that the band-aid and paper sutures were inadequate to keep

9

the wound from reopening, which it did, and put plaintiff at risk for infection, which he subsequently developed, and then required an operation to address. Defendant's refusal to wrap and dress plaintiff's incision, contrary to the doctor's orders, could be construed as deliberate indifference.

For all of the above reasons, the undersigned recommends that defendant's motion to dismiss the complaint for failure to state a plausible claim for deliberate indifference to a serious medical need be denied.

### E. Qualified Immunity

Government officials are immune from civil damages "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances . . . the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Because qualified immunity protects government officials from suit as well as from liability, it is essential that qualified immunity claims be resolved at the earliest possible stage of litigation." Id. at 233-34 (citing Mitchell v. Forsyth, 472 U.S. 511, 526, (1985)).

In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001). These questions may be addressed in the order most appropriate to "the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. Thus, if a court decides that plaintiff's allegations do not support a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. On the other hand, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court need not determine whether plaintiff's allegations support a statutory or

constitutional violation. Pearson, 555 U.S. at 236-242.

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523 (1987). We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. See ibid.; Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986).

Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). A right is clearly established if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted . . . or whether the state of the law [at the time of the violation] gave fair warning to the official[ ] that [his] conduct was [unlawful]." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (internal quotation marks and citations omitted). This does not require that the same factual situation must have been decided, but that existing precedent would establish the statutory or constitutional question beyond debate. Id.; Nelson v. City of Davis, 685 F.3d 867, 884 (9th Cir. 2012).

Here, defendant relies on al-Kidd, and Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (defendant entitled to qualified immunity unless it is beyond debate that the course of treatment chosen was medically unacceptable under the circumstances).[3] Defendant argues that she is entitled to qualified immunity because it is not beyond debate that defendant's choice of wound dressing violated the Eighth Amendment.

At the time of this incident, it was clearly established that prison officials could not be deliberately indifferent to plaintiff's serious medical needs. But in the context of this case, it was not clearly established that defendant would or could have known that in exercising her medical judgment, even in the face of a doctor's note instructing that the incision be dressed and wrapped, defendant's choice of applying two paper sutures and a band-aid instead of gauze bandages would violate plaintiff's constitutional rights. Defendant did not fail to treat plaintiff, but rather chose a

---

[3] Defendant primarily relies on cases decided in 2015, 2016, and 2017. (ECF No. 55-1 at 7.) However, when engaging in qualified immunity analysis, district courts are required to consider the law at the time the plaintiff's injury occurred. Robinson v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001). The incident at issue here occurred in 2013. Because these cases cited by defendant were decided after the 2013 medical care at issue here, such decisions could not have guided defendant's conduct in 2013, and are therefore not addressed.

11

treatment that was arguably not medically unacceptable. Plaintiff provides no legal authority demonstrating that it is beyond debate that applying two paper sutures and a band-aid to his incision was medically unacceptable under the circumstances. Indeed, he provided no legal authority. A reasonable medical professional in defendant's position could have believed that despite the doctor's order, defendant, as an R.N. had the authority to exercise her medical judgment, following the removal of sutures, to determine the appropriate dressing for a small incision that was not bleeding at the time of treatment.

Therefore, the undersigned recommends that defendant be granted qualified immunity and this action be dismissed.

VI. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that defendants' motion (ECF No. 60) to strike plaintiff's sur-reply (ECF No. 59) is granted.

IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 55) be partially granted;

2. Defendant be granted qualified immunity; and

3. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, petitioner any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 3, 2017

_KENDALL J. NEWMAN_
UNITED STATES MAGISTRATE JUDGE

/john0580.mtd.12b6